BARCLAY v. BARRIE.

(Supreme Court, Appellate Division, First Department.    January 3, 1913.)

Appeal from Special Term, New York County.

Action by Reginald G. Barclay against Alexander Barrie. From the judgment, plaintiff appeals. Affirmed.

See, also, 144 App. Div. 934, 129 N. Y. Supp. 1113.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Charles F. Brown, of New York City, for appellant.
Edward Bruce Hill, of New York City, for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion of this court on former appeal. 142 App. Div. 670, 127 N. Y. Supp. 403.

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 61 Hun, 625.

INGRAHAM, P. J. (dissenting). This action was before this court on a former appeal from a judgment in favor of the defendant, which was reversed and a new trial ordered. 142 App. Div. 670, 127 N. Y. Supp. 403. The nature of the action and the questions presented are stated in the opinion on the former appeal, and do not need to be restated here.

The copartnership agreement under which the parties to this action had continued business was executed on the 1st of January, 1904, and provided for the copartnership, which continued under various extensions to January 1, 1910; that on or about the 7th of February, 1908, a further agreement was executed, which continued the said corpartnership to the 1st day of January, 1913; that the copartnership agreement provided for a capital not exceeding $150,000, subsequently increased to $400,000, which would draw interest at 6 per cent. per annum, and which capital should not be withdrawn, except by mutual consent; that all gains, profits, and increase that shall come, grow, or arise from or by means of said business should be divided equally between the parties to the agreement; that at all times during the continuance of said copartnership each partner should give reasonable time, attention, and attendance to, and use reasonable endeavors in, the business of said copartnership, and should, with reasonable skill and power, exert himself for the joint interest, profit, and advantage of the copartnership. The defendant further covenanted that he would not, after the expiration of the agreement, or any removal thereof, manufacture or sell any of the articles specified in the copartnership agreement; that the annual rental for the use of firm name, good will, trade-marks, copyrights, and labels, and the compensation of the plaintiff and to the estate of W. C. Barclay, deceased, for the use thereof, and for the rights conferred by the agreement, should be a sum equal to 55 per cent. of the annual net profits and gains of the entire business to be carried on, which was to be paid to the plaintiff and to the said estate by the copartnership in installments at the end of each month. It was further provided that, in the event of the interest of either partner in said business terminating by limitation, agreement, death, or otherwise, his rental and such interest in capital, etc., should be paid to him or to his legal representatives within five years, with legal interest semiannually, to be computed from the date of such termination. It was also agreed that upon the termination, for any reason, of this copartnership, no allowance should be made to either partner or his representatives for the good will or firm name of said business, or for any trade-mark, copyrights, labels, or rights, or rights to use the same, nor should such good will, firm name, trade-marks, copyrights, labels, or rights be treated or estimated, in any manner, as an asset of the copartnership; but such good will, firm name, trade-marks, copyrights, and labels and rights should revert to the estate of William C. Barclay, deceased, and to the said Reginald G. Barclay, the plaintiff in this action; and the liquidation of said business upon the termination of the copartnership in any way should be in the hands and under the control of the surviving and remaining partners, but the legal representative of a deceased partner was to have a voice in such liquidation.

The court found that from the beginning of the present partnership

down to about March, 1907, the plaintiff attended to the affairs of the partnership business with regularity; that from March, 1907, to May 10, 1908, the plaintiff attended to the affairs of the partnership only irregularly, under and by virtue of the agreement of January 4, 1907, and February 7, 1908, whereby he agreed to pay to the defendant an additional 5 per cent. of the profits of the partnership until he should notify the defendant of his desire to assume a more active part in the management of the business; that the defendant attended regularly to the affairs of the partnership business from the beginning of the partnership down to May 10, 1908; that on or about May 10, 1908, the defendant suffered from the rupture of a blood vessel in the brain, and as a result thereof had a paralysis of the right side of his body and a difficulty of speech, and thereby became incapacitated from devoting any time, attention, or attendance to the business of the copartnership, or using reasonable endeavors in the business of the copartnership, or exerting himself for the joint interest, profit, and advantage of the copartnership with reasonable skill or power, and from in any way selling, dealing, or merchandising with the joint stock and increase of said business; that the defendant has not recovered from the effect of said stroke of paralysis, and the said incapacity resulting therefrom, but that his condition will so improve that, prior to the time limited for the existence of the copartnership (January 1, 1913), he will make a practical recovery of his health; that the condition of the defendant will continue to improve, ending in a practical recovery, within the time limited for the existence of the copartnership; that the defendant's mentality has never been involved, and he has not shown any sign of mental deterioration; that on or about March 1, 1909, the plaintiff sent to the defendant a letter calling his attention to the fact that since the 10th day of May, 1908, the defendant had wholly failed to perform any of his duties as provided for by the articles of copartnership; that during all that time the defendant had been continuously absent from the office of the firm, but had left the management wholly to the plaintiff; that under article 7 of the articles of copartnership the plaintiff gave the defendant notice that omissions above specified were breaches of said article 7, and that the plaintiff would consider the said firm terminated after the expiration of 30 days; that on April 1, 1909, the plaintiff changed the partnership bank accounts, so that no check could be drawn on the signature of the defendant, and since May 10, 1908, the defendant had not attended to the business of the partnership, but the business had been managed by the plaintiff; that on or about November 21, 1911, the plaintiff received a letter from the defendant stating the defendant's desire to return to business, and requesting that the bank accounts be changed so as to enable him to draw on them; that the amount of capital contributed in cash by the defendant to the partnership was approximately $130,000 and the amount contributed in cash by the plaintiff was approximately $110,000, and each partner had been receiving interest on the cash capital contributed by him to the partnership, and in addition to that there had been paid to the defendant the sum of $750.

The court found as a conclusion of law that the plaintiff was not entitled to a dissolution of the copartnership, that the defendant had

not committed any breach of the articles of copartnership which would justify a court of equity in dissolving the copartnership, and directed judgment dismissing the complaint.

On the trial it appeared that the defendant had not appeared at the place of business of the copartnership since May 10, 1908, and had never attempted in any way to perform any of his duties as a copartner; that before the last trial of the action the defendant voluntarily absented himself from the state, so that he could not be served with a subpœna, or could not be forced to attend the trial of the action, and the evidence of his physicians seems to me to conclusively establish that in consequence of his physical condition he was incapacitated from attending to the business of the copartnership, or performing the duties that he assumed under the copartnership agreement. The action was tried on the 22d and 25th days of March, 1912. The inability of the defendant to comply with the copartnership articles and to give any time and attention to its business lasted from May, 1908, substantially four years, and the copartnership had less than a year to run. It has been established that the physical disability which existed from March, 1908, had continued until the trial, about four years, and there is no reason to suppose that the defendant could substantially perform the copartnership business on his part during the remaining months of the existence of the copartnership.

When this case was before this court on the former appeal, the judgment for the defendant was reversed, and a new trial ordered. We held that the copartnership agreement did not contemplate a dissolution of the firm ipso facto by the service of a notice by one partner upon the other, even in the case of a long-continued absence, but that "a long-continued and willful neglect of the business might furnish a sufficient ground for the dissolution of a firm; * * * that a partnership will not be dissolved in consequence of the physical incapacity of a partner, which is temporary in its nature, although prolonged, but will be dissolved for total and permanent incapacity." That opinion was concurred in by a majority of the court; but Mr. Justice Laughlin wrote an opinion, wherein I concurred, which states what I consider the true rule, that where it appears that one partner has been stricken with a disease which practically makes it impossible for him to perform the duties assumed by him by his copartnership agreement, such disability is not of a temporary nature, but is permanent in its character, and that the remaining partner is entitled to apply to a court of equity for a dissolution of the copartnership.

Whether we call such a disability permanent or temporary, if it appears by substantial evidence at the time of the trial that the disability was such as to prevent the disabled partner from rendering any substantial service to the firm during the period for which the copartnership was to exist, a court of equity was thereby justified in dissolving the copartnership and liquidating the business, as provided for in the copartnership articles. In May, 1908, there was a copartnership which was to continue for a little less than five years. At that time the defendant was stricken with paralysis, which disabled him from performing the duties of a copartner in the conduct of a business such

as the one carried on by the parties to this action. When such disability had continued for over a year, without any attempt by the disabled partner to seriously perform any of the duties assumed by him under the copartnership articles, the remaining partner had a right to apply to a court of equity for a dissolution of the copartnership; and if, on the trial of the action, it appeared with reasonable certainty that the physical condition of the disabled partner was such that he would not be able to resume his duties as copartner within a reasonable time, and that this disabled condition had existed four years, the copartnership having less than a year to run, and that the disabled partner was not in a condition to attend the trial, the mere opinion of physicians that he was substantially improving, and might, on the last day of the period for which the copartnership was to exist, be able to attend to business, did not justify the court in refusing to dissolve the copartnership.

We have the allegation in the complaint that this disability was permanent, and would continue during the whole term of the existence of the copartnership. We have that fact proved when the case finally came on for trial. The actual condition of the defendant during these four years is certainly the very best evidence as to the permanent condition of his disability; and upon the undisputed facts, as found by the court, I think that this plaintiff was entitled to a judgment dissolving the copartnership as of the date of the commencement of the action.

For these reasons, I think the judgment should be reversed, and judgment directed for the plaintiff upon the findings of the Special Term, as before indicated.

LAUGHLIN, J.. concurs.